THE RESTIS LAW FIRM, P.C.
William R. Restis, Esq. (SBN 246823)
william@restislaw.com
550 West C Street, Suite 1760
San Diego, California 92101
+1.619.270.8383
+1.619.752.1552

*Attorney for Defendant Capital Alliance Group*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION – SANTA ANA

| | |
|---|---|
| **JOHN NORTHRUP**,<br><br>Plaintiff,<br>v.<br><br>**CAPITAL ALLIANCE GROUP**<br><br>Defendant. | Case No.: 18-cv-23-JLS-DFM<br><br>**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RELIEF OF DEFAULT**<br><br>Date: Friday, July 6, 2018<br>Time: 2:30 p.m.<br>Courtroom 10A<br><br>Honorable Josephine L. Staton |

## I.     INTRODUCTION

Plaintiff John Northrup's ("Plaintiff") class action lawsuit is a shakedown of a small local business, which Defendant Capital Alliance Group ("Defendant" or "Capital Alliance") is now committed to defend. At first, Defendant's – unrepresented - CEO responded to the Complaint by providing voluntary discovery to Plaintiff's counsel clearly and cogently demonstrating that Defendant's calling systems do not violate the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA"), and batting away Plaintiff's attempts at an "individual settlement." As the settlement demands proved relentless, and Defendant's explanations fell on deaf ears, Defendant gave up and retained counsel.

Because of the *strong policy favoring decisions on the merits*, and to avoid burdening the Court with briefing on this issue, Defendant's new counsel requested that Plaintiff stipulate to a response deadline of May 25, 2018, the same day this Opposition is due. Plaintiff's counsel refused, hoping to cash in on Defendant's default instead of having to prove his case.

As will be shown below and through the course of this litigation, Defendant's telemarketing does not violate the TCPA.  Because Defendant is now tired of paying off shakedown lawsuits, Defendant is prepared to take this matter to trial to prove it. And all factors weigh in favor of vacating default and proceeding to the merits. Accordingly, Defendant respectfully requests that this Court grant relief from default, and grant Defendant leave to file the answer answer attached to the concurrently filed Restis Declaration.

## II.    ARGUMENT

### A.    THE FACTS

#### i.    Defendant's Excusable Failure to Timely Respond

When Defendant was served with the Complaint, "Capital Alliance ha[d] been struggling financially for 2 years" and was having "serious cash issues, so incurring additional legal costs [would] make [its] situation increasingly difficult." Charan

Declaration ISO Default Motions ("Charan Decl."), ¶ 14, citing Ex. A at pp. 8-9 (email chain between Defendant's CEO and Plaintiff's counsel). Defendant "d[id] not have the funds to retain" an attorney. *Id.*, ¶ 17, Ex. A at p. 9.

As such, between January 24, 2018 and April 17, 2018, Defendant's CEO provided voluntary discovery to Plaintiff's counsel disclosing the workings of its business in an attempt to convince Plaintiff to dismiss his lawsuit. *Id.*, ¶¶ 4-29, and Exs. A and F (emails).

Defendant's CEO explained that its company makes sales calls exclusively to businesses, and that each of those sales calls is conducted by live human agents manually making each sales call. *Id.*, ¶¶ 4-7, 11, 13, 19, 22, and 24. Defendant's CEO provided multiple examples of controlling case law, and FCC interpretations that this method of sales calls does not violate the TCPA. *Id.*

When asked by Defendant's CEO to explain how he was wrong, Plaintiff's counsel could not come up with a cogent – or any – response other than "[t]he complaint is not frivolous". *Id.,* ¶¶ 8-10, 12-13. Plaintiff's counsel then switched tactics, to settlement negotiations. *Id.*, ¶¶ 17, 20-21, 23, 25, 27. If Defendant did not agree to an individual settlement, Plaintiff would proceed to seek default judgment. *Id.*, ¶¶ 23, 25, 27. Defendant then retained the undersigned counsel on or about April 23, 2018. *See* Dkt No. 18.

ii.   <u>Defendant's Attempt To Stipulate To A Response Deadline</u>

While scrambling to prepare the instant motion paperwork, on May 14, 2018, Defendant's counsel emailed Plaintiff's counsel to express Defendant's desire "to avoid burdening the Court with briefing on th[e] issue" of default. Restis Declaration ISO Default Motions ("Restis Decl."), Ex. A. Defendant's counsel proposed a stipulated response deadline of May 25, 2018, the date Defendant's response to Plaintiff's motion for default would otherwise be due. *Id.* This was intended "to avoid prejudice to the Plaintiff." *Id.* On May 15, 2018, Mr. Fein responded that he "cannot agree to drop [Plaintiff's] motion for default." *Id.*, Ex. B. That same day, Mr. Fein again emailed Defendant's counsel with a

confidential offer for an individual settlement. *Id.*, ¶ 4. These shakedown attempts were ignored, and this briefing follows.

### iii. Defendant's Meritorious Defense

Capital Alliance's sole business is selling loans and lines of credit to small businesses. It has no services that are offered to consumers. Charan Decl., ¶ 30. To accomplish this, Defendant purchases lists of business leads from third party data brokers such as Experian, InfoUsa, and Dunn & Bradstreet. *Id.*, ¶ 31. Defendant selects from a list of criteria to identify its target customers: small businesses that have been established for at least one year, with at least $200,000 in annual sales. *Id.*

At any given time, Defendant employs approximately 5-20 sales representatives ("Sales Rep") to make sales calls to these potential leads. *Id.*, ¶ 32. Each Sales Rep is assigned approximately 1000 to 2000 leads per month. *Id.*, ¶ 33. These leads are loaded into Defendant's Customer Relations Management ("CRM") software provided by SalesForce, which usually includes information such as business name, address, email addresses, and phone numbers. *Id.*, at ¶ 34. This software allows Sales Reps to keep track of any interactions with a lead, such as call notes or indications of interest from any given potential customer, and allows Defendant to service potential customers in various stages of closing a loan deal. *Id.*, ¶ 35.

The SalesForce CRM software interacts with a cloud based phone system hosted by third party RingCentral. *Id.*, ¶ 36. Each Sales Rep has a headset that is connected to their desktop computer, and by extension connected to the RingCentral software. *Id.*, ¶ 37.

Each day, Defendant's Sales Reps make calls to their leads which are populated in the SalesForce CRM. ¶ 38. When a Sales Rep wishes to contact a lead, they click on a detail view within the SalesForce CRM. *Id.*, ¶ 39. The software opens a screen with the business' name, owner's name, business name, phone number, email, and any other information in the system as described above. *Id.* If a phone number is available, it is highlighted by the SalesForce/RingCentral software, which <u>allows the Sales Rep to click</u>

on it with their mouse. With this click, the software dials the number, and the Sales Reps make their pitch. Each call is live and recorded. *Id.* When Sales Reps are finished with a call, they open another lead in the SalesForce software, which retrieves another number to call. *Id.*, ¶ 40. Each Sales Rep is expected to call approximately 200 leads per day. *Id.*

Defendant used the above described system and process to call the Plaintiff herein. *Id.*, ¶ 41. Its records show that seven calls were made to Plaintiff in this manner, which were recorded. *Id.* This is the only method Defendant uses to make sales calls to potential customers, which Plaintiff would describe as members of the "class." *Id.*

### B. STANDARDS FOR RELIEF FROM ENTRY OF DEFAULT

Entry of default may be set aside "for good cause shown." FED. R. CIV. P. 55(c). To determine "good cause", a court must consider three factors: "'(1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice'" the other party. *Arminak v. Arminak & Assocs.*, 2016 U.S. Dist. LEXIS 194175, at *41 (C.D. Cal. Dec. 7, 2016) citing *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010). The discretion to set aside a default is "especially broad where, as here, it is entry of default that is being set aside, rather than a default judgment." *Id.*, at * 42 quoting *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir. 1986). "Where timely relief is sought from a default and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the default so that cases may be decided on their merits.'" *Id.* quoting *Mendoza*.

#### i. Defendant Did Not Engage In Culpable Conduct

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *Signed Personal Check No. 730*, 615 F.3d at 1092 (emphasis in original). "[T]he term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to

answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" *Id.* The standard is particularly lenient when the defaulting party was not represented by counsel at the time of default. *Id.*, at 1093 ("It is sufficient to observe that Mesle is not a lawyer and that he was unrepresented at the time of the default; accordingly, the proper standard to apply was that of *TCI Group*.")

Defendant was unrepresented at the time of default. *See* Charan Decl., ¶¶ 14, 16. At the time of default, Defendant's CEO was providing voluntary discovery to Plaintiff to demonstrate his compliance with the TCPA. *Id.*, ¶¶ 4-7, 11, 13, 19, 22, and 24. Defendant's CEO was also responding to settlement negotiations from Plaintiff's counsel. *Id.*, ¶¶ 17, 20-21, 23, 25, 27. Defendant was also suffering liquidity issues at that time, and could not afford to defend this action. *Id.*, ¶¶ 14, 17.

As the Ninth Circuit found in *Signed Personal Check No. 730*:

> [Defendant]'s failure to respond allowed him neither to "take advantage" of the federal government, nor to "manipulate the legal process." The only outcome that such a failure could have earned him was what he received: a default and a heightened possibility of the loss of his property, … In contrast, behavior that we have found culpable usually involves conduct by parties that is calculated to help them retain property in their possession, and avoid liability by staying out of court: for instance, when companies act to avoid service in order to thwart their customers' attempts to bring suit against them.

730, 615 F.3d at 1093-94 ("In short, the district court erred in finding [defendant's] conduct culpable because of his failure to act after being notified of the need to do so, in the absence of any indication that he acted in bad faith.") Because there was no bad faith by Defendant, default should be set aside.

ii.   Defendant Has A Meritorious Defense

In order to succeed on his TCPA claim, Plaintiff must show that Capital Alliance (1) called his cellular telephone number; (2) using an "automatic telephone dialing system" ("ATDS"); (3) without Plaintiff's "prior express consent." 47 U.S.C. § 227(b)(1)(A); *L.A. Lakers, Inc. Inc. v. FDIC*, 869 F3d 795, 804 (9th Cir. 2017). By way of example only, Plaintiff's class action Complaint makes bare conclusions that Defendant made "robocalls" using an "[ATDS]".  *See* Dkt No. 1, ¶¶ 6, 8, 14. But Plaintiff cannot succeed on the merits. Defendant does not conduct "robocalls" or use an "automatic telephone dialing system," which is fatal to Plaintiff's claim. *See* § II.A.iii, *supra*.

As the most recent case on this issue noted "the overwhelming weight of authority applying this element hold that 'point-and-click' dialing systems, paired with a cloud-based pass-through services, do not constitute an ATDS as a matter of law in light of the clicker agent's human intervention." *Marshall v. CBE Grp., Inc.*, No. 2:16-cv-02406-GMN-NJK, 2018 U.S. Dist. LEXIS 55223, at *10-21 (D. Nev. Mar. 30, 2018) (emphasis added) citing *Strauss v. The CBE Grp., Inc.*, 173 F. Supp. 3d 1302, 1310-11 (S.D. Fla. 2016) (granting summary judgment because "CBE has presented substantial evidence that human intervention is essential at the point and time that the number is dialed using the MCA and that the Noble equipment used does not have the functionalities required to classify it as a predictive dialer . . . ."); *Pozo v. Stellar Recovery Collection Agency, Inc.*, 2016 U.S. Dist. LEXIS 146432, 2016 WL 7851415, at *4 (M.D. Fla. Sept. 2, 2016); ("As in *Strauss*, Stellar's clicker agents initiate all calls by clicking a dialogue box . . . . Most importantly, [call software] does not allow any calls to be made without a Stellar agent clicking the dialogue box to initiate the call."); *Smith v. Stellar Recovery, Inc.*, 2017 U.S. Dist. LEXIS 35067, 2017 WL 955128, at *3 (E.D. Mich. Mar. 13, 2017); ("[T]he HCI system is characterized by one key factor that separates it from autodialers; it requires human intervention—the clicker agent—to launch an outgoing call. Since the 'basic function' of an autodialer is the capacity to dial phone numbers 'without human intervention,' and the

HCI system lacks that capacity, the HCI is not an autodialer."); *Arora v. Transworld Sys., Inc.*, No. 15-cv-4941, 2017 U.S. Dist. LEXIS 135240, 2017 WL 3620742, at *1, *3 (E.D. Ill. Aug. 23, 2017); ("Each call initiated from a Human Call Initiator must be initiated by a human 'clicker agent.' . . . Because all calls from TSI were made with human intervention, and not with an ATDS, <u>Arora's TCPA claim fails as a matter of law</u>.") (emphasis added).

This is exactly what Defendant's CEO attempted to communicate to Plaintiff's counsel to no avail. *Cf.* Naran Decl., *passim*, with Motion for Default, Dkt No. 15 at p. 4:21-25 ("Defendant's CEO, in email communications with Plaintiff's counsel, has taken the position that … his dialing system does not constitute an … ATDS[] as defined by the [TCPA] because of 'human intervention' involved in the calls.") The case provided to Defendant's unrepresented and frankly vulnerable CEO as purportedly establishing liability, is in agreement. *Cf.* Motion for Default, at p. 5:3-4 ("Plaintiff's counsel sent Defendant's CEO two opinions demonstrating the flaws in his legal positions.") citing *McMillion v. Rash Curtis & Assocs.*, 2018 U.S. Dist. LEXIS 17784, at *10 (N.D. Cal. Feb. 2, 2018) ("The FCC and several district courts have 'recognized that, technological advances aside, 'the basic function of such equipment has not changed — the capacity to dial numbers <u>without human intervention</u>.'") (emphasis added).

### iii. Plaintiff Will Not Be Prejudiced

To establish prejudice, vacating a default "must result in greater harm than simply delaying resolution of the case." *Signed Pers. Check No. 730*, 615 F.3d at 1095 citing *TCI Group*, 244 F.3d at 701. Here, the passage of time has been *de minimus* in the context of a complex class action, and Defendant stands willing and ready to answer. *See,* Restis Decl., Ex. C (proposed answer). In fact, had Plaintiff not insisted on pursuing default, this case would now be at issue. Thus, there is no prejudice to Plaintiff.

The only prejudice that Plaintiff can claim is that "Defendant has ignored this lawsuit, and will likely continue its unlawful robocall activities if Court [*sic.*] fails to enter the Judgment and injunction." Motion for Default Judgment P&A, Dkt No. 15, at p. 4:16-

19. But as shown herein, Defendant's activities are entirely lawful. In addition, Plaintiff has not shown that he has standing to seek an injunction because Plaintiff has not alleged facts that he is likely to be called again by Defendant (even if illegal). *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 587 (N.D. Cal. 2015) ("To establish standing for prospective injunctive relief, Plaintiff must demonstrate that 'she has suffered or is threatened with a concrete and particularized legal harm coupled with a sufficient likelihood that she will again be wronged in a similar way.'") (citing cases).

## III. CONCLUSION

The Court should grant Defendant relief from default, and grant Defendant leave to file its answer.

Respectfully submitted,

DATED: May 24, 2018                               THE RESTIS LAW FIRM, P.C.

　　　　　　　　　　　　　　　　　　　　　　　/s/ William R. Restis
　　　　　　　　　　　　　　　　　　　　　William R. Restis, Esq.
　　　　　　　　　　　　　　　　　　　　　550 West C Street, Suite 1760
　　　　　　　　　　　　　　　　　　　　　San Diego, CA 92101
　　　　　　　　　　　　　　　　　　　　　Tel: +1.619.270.8383
　　　　　　　　　　　　　　　　　　　　　Email: william@restislaw.com