Cory S. Fein (SBN 250758)
Cory Fein Law Firm
712 Main St., #800
Houston, TX 77002
Telephone: (281) 254-7717
Facsimile: (530) 748-0601
Email: cory@coryfeinlaw.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| **JOHN NORTHRUP** | Case: 8:18-cv-23-JLS-DFM |
| Plaintiff, | **PLAINTIFF'S REPLY IN SUPPORT OF DEFAULT JUDGMENT** |
| v. | |
| **CAPITAL ALLIANCE GROUP** | |
| Defendant. | |

Plaintiff John Northrup files this Reply In Support of Default Judgment and, in support, states as follows:

**I.      Defendant's Failure To Respond Is Not Excusable**

Defendant mischaracterizes the history of this litigation, calling the lawsuit a "shakedown of a small local business," and accusing Plaintiff's counsel of insisting on proceeding with a "gotcha" default. (Dkt. 19 at 2.) Defendant claims that it is "tired of paying shakedown lawsuits" and wants to take this matter to trial to provide that it is not violating the TCPA. (*Id.*)

Defendant's CEO, Mr. Charan, never claims that he was confused about his deadline to respond to the complaint, or that he asked for an extension of the deadline. Defendant's only excuse for failing to respond to the lawsuit is that it "did not have the funds to retain an attorney." (Dkt. 19 at 3.) In support of this assertion, Defendant cites Paragraph 17 of Charan's declaration and Exhibit A at p. 9. (*Id.*)

1

Nothing in Paragraph 17 or elsewhere in Charan's declaration provides competent evidence to support this assertion. Similarly, Page 9 of Exhibit A is an email wherein Charan states that Defendant "has been struggling financially for 2 years now," has "serious cash issues, so incurring additional legal costs make our situation increasingly difficult." This conclusory, vague and unsupported statement is not competent evidence of Defendant's financial condition and should not be considered by the Court. It also conflicts with Charan's statements that Defendant has sufficient assets to purchase lists of business leads from at least three third-party brokers (Dkt. 20-2 at ¶31,) and employs between 5 and 20 sales representatives who each call between 1000 and 2000 leads per month. (*Id.*, at ¶33.)

Moreover, Mr. Charan did not ask Plaintiff for an extension of Defendant's deadline. Defendant was served on January 12, 2018, making its deadline to respond February 2, 2018. (Dkt. 9.) On January 24, 2018, Mr. Charan acknowledged receiving the complaint. (Dkt. 20-2 at 16.) As evidenced by the emails filed with Mr. Charan's declaration, Plaintiff repeatedly corresponded with Defendant to try to get Defendant to respond to the lawsuit. Eleven days after the deadline to respond, on February 13, Plaintiff emailed Mr. Charan, "Are you going to respond to the lawsuit?" (Dkt. 20-2 at 12.)

On February 22, 20 days after Defendant's deadline passed, Plaintiff advised Mr. Charan to get a lawyer. (Dkt. 20-2 at 12.) Plaintiff also advised Mr. Charan that Plaintiff would move for a default judgment and stated, "If you would like some additional time to respond, or would like to discuss anything else regarding this matter before I file the motion, please let me know." (*Id.* at 14.) Mr. Charan never asked for additional time to respond to the lawsuit. Instead he demanded Plaintiff dismiss the lawsuit and, when Plaintiff refused to dismiss the case, Mr. Charan responded with name-calling and threats. On April 17, 2018 (more than 2 months after the response deadline passed), Mr. Charan emailed Plaintiff's counsel, "You're a coward." (Dkt. 20-2 at 50.) He then emailed, "I will file the response and make it my mission that you and

serial litigant John Northrup are exposed." (*Id.*) He followed through with his threat to "expose" Plaintiff's counsel by having multiple people post negative reviews on Plaintiff's counsel's Facebook page and Google Business page. (Dkt. 15-1 at ¶11.) Plaintiff's counsel was able to remove some of these attacks, but not all of them.

Accordingly, there is no competent evidence to support an excusable failure to timely respond. Defendant did not request an agreed response deadline until May 14, more than three months after the deadline. If this were a "gotcha" default, as Defendant argues, Plaintiff would have filed his motion for default long ago. Instead, Plaintiff did not file a motion for clerk default until February 25, and did not file his motion for entry of default judgment until the Court entered its April 19 Order, stating that it would dismiss Plaintiff's case for lack of prosecution if Plaintiff did not move forward with a Motion for Default Judgment. (Dkt. 14.)

On May 14, 2018, Defendant's counsel asked Plaintiff to drop his motion for default. (Dkt. 20-3.) At this point, Plaintiff and his counsel were well within their rights to refuse this request, in light of Mr. Charan's deliberate decision to ignore the lawsuit for more than 3 months, and his name-calling and attacks on Plaintiff's counsel's law firm's Google Business and Facebook pages. Defendant has no valid excuse for its intentional and belligerent refusal to respond to the lawsuit, which is a key consideration in deciding whether to grant default judgment.

## II.     Background Of Defendant And Its CEO

Plaintiff recently learned additional background information about Defendant and its CEO that is relevant to the Court's determination. In August 2013, Defendant's CEO, "Narin Charanvattanakit, a/k/a Narin Charan, a/k/a Clayton Heath" and three of his companies entered into a consent decree with the Indiana Attorney General, forcing him to stop sending unsolicited junk faxes to people in Indiana (**Exhibit A**.)

In 2016, Defendant and its CEO, Mr. Charan, settled a class action similar to the present case involving robocalls in the Southern District of California, the *Bee Denning*

3

case.[1] As part of the *Bee Denning* settlement agreement, Defendant and Mr. Charan (who were represented by counsel) agreed to an injunction in effect for two years from the date the Final Approval Order became final, meaning from December 16, 2016 to December 16, 2018. (**Exhibit B**, *Bee Denning* Settlement, Docket No. 71-3 at ¶¶2.2(B), p. 4.) The injunction provided, among other things: "Defendants [Capital Alliance Group and Mr. Charan] and Defendants' successors shall not call cellular telephones prior to receipt of the express written permission of the intended recipient, including the intended recipient's signature." (*Id*. ¶2.2(B)(7), p. 5).

Defendant violated this provision of the injunction repeatedly with respect to Plaintiff, who received nine calls to his cell phone from Defendant during December 2017, without his consent. (Dkt 15-2 at ¶¶3-5.) Charan's declaration admits that Capital Alliance places thousands of calls per day, without doing anything to remove cell phone numbers. (Dkt. 20-2 at ¶¶30 - 41.)

The plaintiff's counsel in *Bee Denning* also demonstrated that Mr. Charan's challenges to various facts alleged by plaintiffs were meritless. (*See* **Exhibit C**, *Bee Denning* Settlement, Docket No. 28-1 at pp. 2-8.) Accordingly, the Court should be hesitant to believe Mr. Charan's factual assertions about his dialing system (in addition to rejecting his legal arguments which conflict with case law, as discussed above.) Moreover, it is clear that Defendant and its CEO are sophisticated litigants. Rather than asking for an extension, they allowed the answer deadline to pass and chose to launch a smear campaign against Plaintiff's counsel instead. While this Court has discretion to allow Defendant to file an answer at this late date, Defendant should not reward Defendant for its conduct and intentional disregard.

---

[1] The settlement was entered in two consolidated cases: *Bee, Denning, Inc., et al. v. Capital Alliance Group and Narin Charanvattanakit*, No. 3:13-cv-02654-BAS-WVG; and *Daniela Torman v. Capital Alliance Group d/b/a Capital Alliance d/b/a Bankcapital D/B/A Bankcapital Direct d/b/a Trusted Bancorp, Narin Charanvattanakit a/k/a Narin Charan a/k/a Clayton Heath*, No. 3:14-cv-02915-JLS-MDD.

[2] Plaintiff's Complaint alleged that the unsolicited calls were placed to Plaintiff's

This case does not involve an unsophisticated defendant. It also does not involve negligence or even reckless disregard. It involves the intentional decision of a sophisticated litigant.

### III. Courts Applying the *Eitel* factors Correctly Grant Default Judgments in Similar Cases

"In applying the *Eitel* factors, 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true'." *Campbell v. Walden Asset Mgmt., LLC*, No. 2:17-CV-798 JCM (GWF), 2018 U.S. Dist. LEXIS 86516, at *2 (D. Nev. May 23, 2018) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). Accordingly, Plaintiff's allegations about Defendant's dialing system constituting an ATDS must be taken as true, without regard to Defendant's declaration filed months after its response deadline.

Courts routinely grant default judgment despite the seventh factor favoring decisions on the merits (which always weighs against default judgment), when the six other *Eitel* factors weigh in favor of default judgment. *XIFIN, Inc. v. Firefly Diagnostics, Inc.*, No. 3:17-cv-00742-BEN-KSC, 2018 U.S. Dist. LEXIS 39299, at *8 (S.D. Cal. Mar. 9, 2018); *Amur Equip. Fin., Inc. v. CHD Transp. Inc.*, No. 1:17-cv-00416-AWI-SKO, 2017 U.S. Dist. LEXIS 189159, at *25 (E.D. Cal. Nov. 14, 2017) (citing cases); and *Lyon v. Bergstrom Law, Ltd.*, No. 1:16-cv-00401-DAD-SKO, 2017 U.S. Dist. LEXIS 83374, at *23 (E.D. Cal. May 31, 2017) (citing cases).

In *Mabeza v. Ashfield Mgmt. Servs., LLC*, No. 17-cv-1946-AJB-KSC, 2018 U.S. Dist. LEXIS 45849, at *8 (S.D. Cal. Mar. 20, 2018), the court granted default judgment in a TCPA case in the amount of $1,500 per call. The court found that there was no possibility of dispute concerning material facts because "[u]pon entry of default, all well pleaded facts in the complaint are taken as true, except those relating to damages" and when the clerk enters default, all well pleaded facts are presumed to be true. *Mabeza*, 2018 U.S. Dist. LEXIS 45849, at *10. The court found that "Mabeza

sufficiently alleged Ashfield's calls to him were made using an ATDS. . . . Although these are general allegations, Mabeza is correct that his complaint 'supports a reasonable inference that the phone calls were sent using an ATDS.'" *Id*. at 4. In this case, Plaintiff's claims are similarly sufficient to allege a TCPA claim.[2] The court also found that Mabeza's pleadings sufficiently alleged that he was the called party and did not consent to the calls. *Id*. at *4-5. "Thus, the Court finds Mabeza pled sufficient facts to succeed on his TCPA claim." *Id*. at *5.

## IV. The Case Law Cited by Defendant Involves Failures to Respond by Mistake, Not Intentional Decisions by Sophisticated Litigants to Ignore a Lawsuit

Defendant cites *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001), which discusses the "good cause" standard that governs the lifting of entries of default. It discusses the "*Falk* factors," namely, "whether the defendant's culpable conduct led to the default; whether the defendant has a meritorious defense; and whether reopening the default judgment would prejudice the plaintiff." *Id*., citing *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (per curiam).

The *TCI* court held that the issue of lifting default judgments (similar to granting default judgments) is consistent with the concept of "excusable neglect" which is an equitable concept, taking into account factors such as "prejudice, the length of the delay and impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id*. (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).)

---

[2] Plaintiff's Complaint alleged that the unsolicited calls were placed to Plaintiff's cellular telephone using an ATDS. (Docket No. 1 at ¶14.) The Complaint further alleges that Defendant intentionally violated the TCPA and did it repeatedly without concern of the multiple complaints from persons being harassed by these calls. The Complaint also sufficiently alleged a claim for injunctive relief under the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(A).

"If a defendant's conduct was not 'culpable,' then her failure to respond to a lawsuit is ordinarily 'excusable,' and in the interests of substantial justice the better course may well be to vacate the default judgment and decide the case on the merits." *Id*. at 696-97. "Similarly, if reopening the judgment would actually prejudice the plaintiff who has diligently pursued her claim, then the interest in finality should prevail." *Id.* at 697. Here, the Defendant's conduct was culpable, its failure was not excusable, plaintiff diligently pursued his claim, and plaintiff would be prejudiced.

Defendant cited *United States v. Signed Pers. Check No. 730*, 615 F.3d 1085, 1092 (9th Cir. 2010). However, that case held that "simple carelessness is not sufficient to treat a negligent failure to reply as inexcusable, at least without a demonstration that other equitable factors, such as prejudice, weigh heavily in favor of denial of the motion to set aside a default." However, this case does not involve "simple carelessness"; rather it involves an intentional, defiant refusal to participate in the litigation (or ask for an extension) for months after the deadline, and a decision to disparage Plaintiff's counsel instead.

The Court would set a bad precedent were it to deny default judgment, suggesting that a sophisticated litigant can choose to intentionally ignore a lawsuit with no repercussions.

## V.     Additional *Eitel* Factors Support Default Judgment

### A.     Prejudice

Plaintiff has been prejudiced by having to file his default judgment motion and supporting documents, having to reply to Defendant's response, having to work with Google and Facebook to have Defendant's attacks removed, as well as the extensive delay.

### B.     Defendant Lacks a Meritorious Defense

Charan claims that Defendant has a meritorious defense, arguing that, "The Telephone Consumer Protection Act is intended toward business-to-consumer

communications, not business-to-business. Capital Alliance transacts with business only, not consumers." Dkt. 20-2 at ¶6. His position has been expressly rejected, and Plaintiff's counsel explained that to him, and sent him a copy of *Warnick v. Dish Network LLC*, No. 12-cv-01952, 2014 U.S. Dist. LEXIS 138381, at *33 (D. Colo. Sep. 30, 2014), which expressly held that "any call to a cellular telephone, whether assigned to a business or not, is prohibited under the TCPA when the other requirements are met." *See* Dkt. 20-2 at 38-41.

Plaintiff also explained to Mr. Charan that the definition of an automatic telephone dialing system is broader than he thought it was, and sent him a copy of *McMillion v. Rash Curtis & Assocs.*, No. 16-cv-03396-YGR, 2018 U.S. Dist. LEXIS 17784, at *10 (N.D. Cal. Feb. 2, 2018) which held that human intervention by a robocaller's employees in a robocalling system does not make them fall outside the TCPA's definition of an automatic telephone dialing system. As demonstrated by *McMillion* and the cases cited by Defendant, the definition of an automatic telephone dialing system (ATDS) is still evolving, with numerous cases decided in the last couple years. The FCC's position is that human intervention does not necessarily prevent a system from being an ATDS. "According to the Commission, then, the 'basic function' of an autodialer is to dial numbers without human intervention, but a device **might still qualify as an autodialer even if it cannot dial numbers without human intervention**." *ACA Int'l v. FCC*, 885 F.3d 687, 703 (D.C. Cir. 2018) (emphasis added, citing the FCC's declaratory rulings.) Courts have criticized the FCC's rulings and the FCC will certainly need to clarify its regulations. Defendant apparently believes it has found a loophole that allows it to continue to use a dialing system to bombard the public's cell phones with thousands of annoying marketing calls. The issue is evolving and Defendant should have answered the lawsuit had it wanted to litigate it.

As evidenced by the emails Mr. Charan attached to his declaration, Plaintiff repeatedly told Mr. Charan that he needed to respond to the lawsuit and argue his positions in the case, rather than in emails to Plaintiff's counsel. Defendant and Mr.

8

Charan are sophisticated litigants and are well aware of their obligation to file a timely response or get an extension. Defendant's substantive claims are not meritorious because what it is unclear what type of dialing systems constitute an ATDS. *See ACA Int'l* and *McMillion.* Also, Plaintiff's allegations about Defendant's dialing system must be accepted as true because Defendant failed to file a timely response to the lawsuit. Finally (as noted in **Exhibit C**, at pp. 2-8), Defendant has a history of false and misleading statements about its operations.

### C. Sum of Money at Stake

Given Defendant's willful engagement in harassing and unlawful robocalls, and its failure to comply with the judicial process or to participate in the present litigation, imposition of a monetary award is warranted. The $13,500 sought is a very small penalty to pay for Defendant's TCPA violations and its decision to ignore this lawsuit. Accordingly, this factor favors granting default judgment. Plaintiff's counsel will already end up spending more time on this case than he could hope to recover.

Plaintiff's counsel does not plan to go forward with a class action because Defendant is unlikely to be able to fund even a modest class action settlement. In the *Bee Denning* case, the parties recognized Defendant's inability to pay and accordingly agreed to a settlement with Defendant paying nothing to absent class members, paying no attorneys' fees, and agreeing to an injunction (which it is violating). (*See* Exhibit B.)

### D. Damages

#### 1. Plaintiff is Entitled to Statutory Damages Under the TCPA

Plaintiff seeks $13,500 in statutory damages. The $13,500 is calculated as the statutory penalty of $1,500.00 per intentional violation (47 U.S.C. § 227(b)) multiplied by the nine violations, yielding a total of $13,500. *See* Complaint, Doc. 1 at ¶¶ 11, 12, and the Declaration of John Northrup (Dkt. 15-2), alleging nine violations. Plaintiff is also entitled to interest from the date this action was filed at the legal rate. *See* 28 U.S.C. § 1961

## 2. Injunctive Relief

There is no need for the Court to enter an injunction because, as Plaintiff recently learned, Defendant and its CEO are already subject to an injunction in the *Bee Denning* case, which they are violating.

Dated: May 30, 2018.

>    */s/ Cory S. Fein*
>    Cory S. Fein
>    California Bar No. 250758
>    Cory Fein Law Firm
>    712 Main St., #800
>    Houston, TX  77002
>    Telephone:  (281) 254-7717
>    Facsimile:  (530) 748-0601
>    Email:  cory@coryfeinlaw.com
>
>    Attorney for Plaintiff

**PROOF OF SERVICE**

I, Cory S. Fein, declare:

I am a citizen of the United States and employed in Harris County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 712 Main St., Suite 800, Houston, TX 77002.

On May 30, 2018, I electronically filed the attached document(s): with the Clerk of the court using the CM/ECF system, thereby serving all parties of record. I declare that I am a member of the bar of this court.

Executed on May 30, 2018, at Houston, Texas.

/s/ Cory S. Fein
Cory S. Fein